# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) CRIM. ACTION 13-0142-WS |
| | ) |
| CRYSTAL HOPE HENRY, | ) |
| | ) |
| Defendant. | ) |

## ORDER

This matter is before the Court on the defendant's motion to dismiss indictment due to entrapment by estoppel. (Doc. 76). The government has filed a consolidated response and the defendant a reply, (Docs. 94, 125), and the motion is ripe for resolution.

The superseding indictment, (Doc. 62), charges the defendant with fifteen offenses, all related to her involvement with XLR11, a synthetic cannabinoid that the government maintains was a controlled substance analogue during the relevant time period. Counts Two through Four charge the defendant with causing misbranded drugs (XLR11) to be introduced into interstate commerce in violation of 21 U.S.C. § 331(a). Counts Five through Seven charge the defendant with importing merchandise (XLR11) contrary to law in violation of 18 U.S.C. § 545. Count One alleges a conspiracy related to Counts Two through Seven. Counts Eight and Nine charge the defendant with conspiring to import and to distribute a controlled substance analogue (XLR11) in violation of 21 U.S.C. §§ 846 and 963. Counts Ten through Fourteen charge the defendant with engaging in monetary transactions in property derived from specified unlawful activity in violation of 18 U.S.C. § 1957, and Count Fifteen charges a conspiracy to do so in violation of 18 U.S.C. § 1956(h). The defendant argues that all charges against her must be dismissed due to entrapment by estoppel. (Doc. 76 at 1, 13). The government

counters that the defendant's argument implicates only Counts Eight and Nine. (Doc. 94 at 1-2). The government's position appears to be correct.[1]

In 2012, the defendant worked at a business, run by Burton Ritchie, which sold products containing XLR11. According to the report of investigation on which the defendant relies, (Doc. 76, Exhibit 5), in July 2012 two DEA agents met with Ritchie at his business office. Ritchie gave the agents a tour of the facility, gave them samples of green leafy substances identified as ingredients in the product, identified a white substance added to the leafy substances as 5-FUR-144,[2] showed the agents a private lab report reflecting the presence of 5-FUR-144, and gave the agents samples of the finished product (having no sample of the white substance). (*Id*. at 3-6). According to the defendant, "Mr. Ritchie advised [her] of his meeting with the DEA agents, and advised her the agents felt they were operating legally and were going to send samples of their products to the DEA laboratory." (Doc. 76 at 8).

On September 13, 2012, state officials conducted a fire and safety inspection of the facility, and a DEA agent (one of the two from July) accompanied them at their request. As of that date, no analysis of the samples obtained in July had been conducted. When Ritchie expressed concern that the inspection (which found numerous building code and safety violations) might be for the purpose of putting him out of business, the DEA agent "advised that, as long as RITCHIE's production of 'spice' did not result in the violation of any laws

---

[1] As addressed in text below, the statements on which the defendant relies relate only to whether the products being distributed, or the ingredients used, constituted or included controlled substances. Only Counts Eight and Nine appear to depend on whether XLR11 was at the relevant time a controlled substance analogue. The misbranding counts focus on allegedly false statements concerning the product's content and whether it was intended for human consumption. The importing-contrary-to-law counts focus on this misbranding and related false declarations, and the monetary transactions counts identify the specified unlawful activity as the misbranding and false declarations.

[2] This substance apparently is the same as XLR11. *United States v. Fedida*, 942 F. Supp. 2d 1270, 1271 at 1271 & n.1 (M.D. Fla. 2013). (Doc. 128 at 2).

regarding the manufacture or distribution of controlled substances, law enforcement could not and would not interfere with his right to engage in commerce." (Doc. 76, Exhibit 5 at 7-9).

When the inspection of a second location concluded, Ritchie asked to speak with the DEA agent and a sheriff's office sergeant in Ritchie's office. Another state official, and three individuals apparently associated with Ritchie, also were present at the meeting. Ritchie expressed concern he was going to be targeted by law enforcement. The sergeant stated that, "due to the business RITCHIE was engaged in and the changing laws concerning synthetic compounds, there was likely going to be further contact with RITCHIE as laws changed and new compounds were added to the controlled substances list." The DEA agent then "advised that, even though compounds RITCHIE was producing and distributing may not be controlled at the present time, the laws may change that would make the compounds illegal in the future." (Doc. 76, Exhibit 5 at 10). According to the defendant, she "was located immediately outside the office where the meeting occurred and heard what was being said." (Doc. 76 at 9-10).

The defendant bases her motion on: (1) Ritchie's statement to her after the July 2012 visit from the two DEA agents; and (2) the agent's statement to Ritchie in Ritchie's office on September 13, 2012. (Doc. 125 at 9).

Entrapment by estoppel is an affirmative defense. *United States v. Eaton*, 179 F.3d 1328, 1332 (11th Cir. 1999). "To assert this defense successfully, a defendant must actually rely on a point of law misrepresented by an official of the state; and such reliance must be objectively reasonable – given the identity of the official, the point of law represented, and the substance of the misrepresentation." *Id*. (internal quotes omitted).

The defendant's motion is brought pursuant to Rule 12(b), which provides in pertinent part that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue." Fed. R. Crim. P. 12(b)(2). "The 'general issue' has been defined as

3

evidence relevant to the question of guilt or innocence." *United States v. Ayarza-Garcia*, 819 F.2d 1043, 1048 (11th Cir. 1987). An argument that "raises factual questions embraced in the general issue" cannot form the basis of a 12(b)(2) motion. *Id*. This includes factual questions concerning entrapment. *See United States v. Graves*, 556 F.2d 1319, 1321-22 (5th Cir. 1976) (the predisposition to commit an unlawful act, as relevant to a classic entrapment defense, "will seldom be capable of determination without the trial of the general issue") (internal quotes omitted); *accord United States v. Dozal-Bencomo*, 952 F.2d 1246, 1250 (10th Cir. 1991). Likewise, factual disputes concerning an entrapment by estoppel defense implicate the general issue and cannot be resolved on a 12(b)(2) motion. *United States v. Schafer*, 625 F.3d 629, 635-36 (9th Cir. 2010).

As noted, one element of entrapment by estoppel is the defendant's reliance on the official's statement. The defendant has presented no evidence that she in fact relied on any such statement, resting instead on her lawyer's unsupported assertion to that effect in brief. Nor has she requested an opportunity to present such evidence. Without evidence of the defendant's reliance, her motion necessarily fails.

Even had the defendant presented evidence of her reliance, the government presumably would dispute it, which factual dispute could not be resolved without trial of the general issue. Under *Graves* and other authorities, that dispute would doom the defendant's motion.

Finally, even were it undisputed that the defendant relied on the agent's statements (and the other elements of entrapment by estoppel were satisfied), the Court could not on that basis dismiss the indictment. "There is no summary judgment procedure in criminal cases" and "no explicit authority to grant a pre-trial judgment as a matter of law on the merits under the Federal Rules of Criminal Procedure." *United States v. Salman*, 378 F.3d 1266, 1268 (11th Cir. 2004) (internal quotes omitted). As noted above, entrapment by estoppel implicates the

general issue of guilt or innocence. It thus goes to the merits of the case against the defendant and so cannot form the basis of a pretrial dismissal.

The government now takes the offensive, arguing that the defendant should be precluded from asserting at trial a defense of entrapment by estoppel based on the version of the facts on which she presently relies. (Doc. 94 at 26). "Generally, courts should not prohibit a defendant from presenting a theory of defense to the jury. Nevertheless, the court recognizes that some relevant factual basis for the defense should exist … before evidence or testimony is offered." *United States v. Thompson*, 25 F.3d 1558, 1564 (11th Cir. 1994) (discussing entrapment by estoppel). Similarly, "[t]he trial court has authority to refuse to instruct the jury on a defense where the evidence used to support it, if believed, fails to establish a legally cognizable defense." *United States v. Billue*, 994 F.2d 1562, 1568 (11th Cir. 1993) (discussing entrapment by estoppel). The government argues that the defendant's evidence is fatally deficient in several respects.

"For a statement to trigger an entrapment-by-estoppel defense, it must be made directly to the defendant, not to others." *Eaton*, 179 F.3d at 1332. This rule clearly precludes the defendant from basing her defense on what Ritchie allegedly told her in July 2012. The defendant argues the *Eaton* rule does not apply to her because, as an employee of Ritchie's business (and later a board member), she was "entitled to rely upon all the statements" of the DEA agent relayed to her by Ritchie. (Doc. 125 at 6). In *United States v. Bachynsky*, 415 Fed. Appx. 167 (11th Cir. 2011), the Court, relying on *Eaton*, held the defendant could not base his defense of entrapment by estoppel on what a government agent said to the man with whom the defendant started and ran the suspect business, even though the man repeated the agent's statement to the defendant. *Id*. at 169, 177-78. In light of *Bachynsky*, the defendant's attempt to limit *Eaton* must fail.[3]

---

[3] Of course, the defendant has identified no evidence that the DEA agent told Ritchie "they were operating legally" to begin with.

5

The government argues that *Eaton* also precludes the defendant from relying on what she overheard the DEA agent say to Ritchie in September 2012. (Doc. 94 at 24). As noted, *Eaton* requires that the government agent's statement "be made directly to the defendant, not to others." 179 F.3d at 1332. "The defense applies only when an official *tells a defendant* that certain conduct is legal …." *Id*. (emphasis in original, internal quotes omitted). While the defendant may have heard what the DEA agent said, he did not speak "directly to the defendant" but "to others," specifically, to Ritchie and the others in the room. The defendant insists that she was "a member of the board and had a right to be informed." (Doc. 125 at 6). But *Eaton* does not create a special exception for people with a "right to know." Because no federal official addressed her, she cannot pursue an entrapment defense based on what the DEA agent said in September 2012.

"Entrapment by estoppel occurs when a government official incorrectly informs a defendant that certain conduct is legal …." *United States v. Johnson*, 139 F.3d 1359, 1365 (11th Cir. 1998); *accord Thompson*, 25 F.3d at 1564; *United States v. Billue*, 994 F.2d 1562, 1568 (11th Cir. 1993). "It is not sufficient that the government official's comments were vague or even contradictory; rather, the defendant must show that the government affirmatively told him the proscribed conduct was permissible …." *United States v. Hancock*, 231 F.3d 557, 567 (9th Cir. 2000); *accord United States v. Aquino-Chacon*, 109 F.3d 936, 939 (4th Cir. 1997). The government argues that the September 2012 episode does not satisfy this requirement. (Doc. 94 at 25).

The DEA agent did not tell Ritchie in September 2012 that XLR11 was not a controlled substance analogue. All he said was that, "even though compounds RITCHIE was producing and distributing *may not* be controlled at the present time, the laws may change that would make the compounds illegal in the future." (Doc. 76, Exhibit 5 at 10). A statement that something "may not be" illegal is, by definition, not a statement that something "is not" illegal, since what may not be illegal also may be illegal. The natural reading of the statement is that, *even if* the

compounds are legal today, they may become illegal tomorrow. Such a statement plainly is not an affirmative representation that the compounds are in fact legal today.

The defendant argues that, "if the laws may change that would make the compounds illegal in the future, then [the] compounds are not illegal now." (Doc. 125 at 5). But this argument only underscores how vague and contradictory the agent's statement was; the defendant can arrive at a favorable interpretation only by placing a spin on the second half of the agent's statement (the compounds are not controlled) contrary to the first half of his statement (the compounds may or may not be controlled). This tension negates the existence of the necessary affirmative, clear representation that the compounds are (not may be) legal.

The defendant insists that the agent's statement must be viewed in the context of the sergeant's comment immediately preceding it. (Doc. 125 at 5). But that context actually introduces even more ambiguity. The sergeant reminded Ritchie that, as new compounds were added to the controlled substances list, there would likely be further contact with Ritchie. But the sergeant, a state official, likely was speaking of potential additions to Florida's list of controlled substances,[4] such that the DEA agent's statement immediately thereafter likely was also addressing state law, not federal law.[5] Which body of law the speakers actually had in mind is not relevant; the point is that it is impossible to say with assurance that the DEA agent was speaking to federal law.

In a related vein, the government argues that any reliance by the defendant on the agent's statement could not be objectively reasonable. (Doc. 94 at 25). The

---

[4] The government asserts that Florida added XLR11 to its list of controlled substances in December 2012, (Doc. 94 at 9), fulfilling the sergeant's prophecy. Fla. Stat. § 893.03(1)(c).152.

[5] This is rendered even more probable by Ritchie's concern with state law, having told the sergeant and DEA agent earlier in the day that "he was careful not to ship products to any state where the compounds were illegal to possess, and mentioned that his company had ceased shipping his products to Vermont the week before due to a change in that state's laws." (Doc. 76, Exhibit 4 at 9).

7

vagueness discussed above precludes the defendant from reasonably relying on the DEA agent's statement. *See Eaton*, 179 F.3d at 1333 (when the agent's statement "could be construed several ways," it was "too vague to allow [the defendant] to reasonably rely upon it").

For the reasons set forth above, the defendant's motion to dismiss is **denied**. Because the government has filed no motion to exclude evidence of a defense of entrapment by estoppel, the Court makes no formal ruling in that regard, but the foregoing discussion reflects that the defendant would not be entitled to a jury charge concerning this defense based on the evidence she has proffered.

DONE and ORDERED this 25th day of March, 2014.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE